**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **TEAMSTERS LOCAL 1164 WELFARE FUND,** | ) ) ) | **CASE NO. 1:08 CV 2609** |
| Plaintiff, | ) ) | |
| v. | ) ) | **JUDGE DONALD C. NUGENT** |
| **AAA PIPE CLEANING CORP., et al.,** | ) ) | |
| Defendant. | ) | <u>**MEMORANDUM OPINION**</u> |

This matter is before the Court on the Motion for Summary Judgment filed by Plaintiff, Teamsters Local 1164 Welfare Fund (the "Welfare Fund"). (Docket #12.) Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Welfare Fund petitions the Court for summary judgment as to the Complaint it filed against Defendants, AAA Pipe Cleaning Corporation and Ernie Fisco. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA").

**Factual and Procedural Background**

The Welfare Fund is a multi-employer benefit plan which provides health care and related benefits to the participants the Plan pursuant to a Trust Agreement. Defendant, AAA Pipe Cleaning Corporation, was a party to and agreed to abide by the terms of a Labor Agreement between AAA Pipe Cleaning and the Brewery Worker, Beer Bottlers and Soft Drink Workers' Local No. 1164. (Labor Agreement, Exhibit 1 to Plaintiff's Motion for Summary

Judgment.) The President of AAA Pipe Cleaning Corporation is Ernie Fisco. (Affidavit of Ernie Fisco ("Fisco Affidavit") at ¶ 1.) The President of the Brewery Worker, Beer Bottlers and Soft Drink Workers' Local is Roberto Paro. (Affidavit of Roberto Paro ("Paro Affidavit") at ¶ 2.) Pursuant to the Labor Agreement, AAA Pipe Cleaning was obligated to make contributions to the Welfare Fund on a monthly basis in accordance with the amount owed per week for each covered employee. (Labor Agreement at Article 15.) Mr. Fisco signed the collective bargaining agreement on behalf of AAA Pipe Cleaning. (Labor Agreement at Article 18.) According to Mr. Paro, Mr. Fisco has a significant financial interest in AAA Pipe Cleaning and exercised complete control over all relevant and significant decisions regarding contributions by AAA Pipe Cleaning to the Welfare Fund. (Paro Affidavit at ¶ 7.)

By notice dated August 28, 2009, AAA Pipe Cleaning notified the Welfare Fund that it was terminating all of its employees covered by the collective bargaining agreement. (Paro. Affidavit at ¶ 9.) The Welfare Fund asserts that AAA Pipe Cleaning failed to make contributions on behalf of its covered employees to the Welfare Fund from October 2007 through August 2008, as is required by the collective bargaining agreement. (Complaint at ¶ 8.) The Welfare Fund asserts that it is due $142,375.22 in delinquent contributions; interest on the delinquent contributions at the rate as provide for by law pursuant to 29 U.S.C. § 1132(g) and 26 U.S.C. § 6621; an additional amount equal to interest on unpaid contributions or twenty percent (20%) of the unpaid contributions, whichever is greater, pursuant to 29 U.S.C. § 1132(g)(2)(C) in the amount of $28,475.04; plus attorney fees, costs of this action and other expenses for collection. (Complaint at ¶ 9.)

The Welfare Fund argues that in addition to the liability of AAA Pipe Cleaning to the Welfare Fund for the delinquent contributions, Mr. Fisco is individually liable to the Welfare

Fund. (Complaint at ¶ 11.) Specifically, the Welfare Fund asserts that Mr. Fisco exercised control over plan assets and breached his fiduciary duty by failing to send the required contributions to the Welfare Fund when they became due.

On October 29, 2009, Defendants AAA Pipe Cleaning and Ernie Fisco filed their Brief in Opposition to the Motion for Summary Judgment filed by the Welfare Fund. Defendants dispute the amount of money that is owed to the Welfare Fund. Defendants argue that five of the employees of AAA Pipe Cleaning were eligible for Medicare coverage during the relevant time period and, that it was Mr. Fisco's belief and a reasonable inference that employees receiving or eligible for Medicare do not constitute "regular employees" and, that different, and presumably lower, payments were due for those employees. (Brief in Opposition at p. 4-5.) Defendants assert that the issue of the payments due for Medicare eligible or covered employees creates an issue to be decided by the trier of fact and defeats summary judgment. (Id.)

In addition, Defendants argue that Mr. Fisco is not a fiduciary under ERISA and is not individually liable for the amounts due, arguing that Mr. Fisco did not exercise authority or control with respect to the management or disposition of Plan assets. (Id. at pp. 7-9.) Finally, Mr. Fisco states that AAA Pipe Cleaning's business took a serious and unexpected downturn as a result of the economy and Mr. Fisco had to determine how best to allocate his limited resources. (Id. at p. 8.) He states that his focus was to keep the business running and made legitimate business decisions as President of AAA Pipe Cleaning, but not as a fiduciary of the Welfare Fund. (Id. at pp. 8-9.)

On November 13, 2009, the Welfare Fund filed its Reply Brief (Docket #17). The Welfare Fund asserts that the fact that certain employees of AAA Pipe Cleaning may be eligible

for or receiving Medicare benefits does not affect their rights under the benefit plan or the obligations of Defendants to make contributions to the Welfare Fund. (Reply Brief at p. 3.) As stated by the Welfare Fund, "all of the actively employed participants in the Fund, including those employed by AAA Pipe Cleaning, and their dependants receive the same benefits regardless of their Medicare eligibility and, as a result, the Employer must make the same contributions." (Second Affidavit of Roberto Paro at ¶ 5.) Further, the Welfare Fund points to the fact that in his affidavit, Mr. Fisco states that because of a downturn in business he chose to pay certain financial obligations ahead of others. The Welfare Fund argues that because Mr. Fisco controlled contributions to the Welfare Fund, Mr. Fisco was making decisions regarding assets that belonged to the Welfare Fund and, as a result, became a fiduciary over those assets. (Reply Brief at p. 4.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires

consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred

with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining

-6-

whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## DISCUSSION

The Parties do not dispute the fact that AAA Pipe Cleaning was obligated pursuant to a Labor Agreement between Local 1164 and AAA Pipe Cleaning to make contributions to the Welfare Fund, as dictated by Article 15 of the Labor Agreement. Further, the Parties do not dispute the fact that AAA Pipe Cleaning did not make contributions to the Welfare Fund from October 2007 through August 2008.

Defendants argue two points against the Welfare Fund's request for summary judgment. First, Defendants argue that the amount of contributions requested is incorrect because contributions for employees who were Medicare eligible were included in the total amount of contributions past due. In his Affidavit, Mr. Fisco asserts that he did not believe payments were required for Medicare eligible employees. Aside from Mr. Fisco's unsubstantiated belief, there is no legal or factual basis for this argument.

Second, Defendants argue that Mr. Fisco was not a fiduciary of the Welfare Fund and, therefore, is not individually liable to the Welfare Fund. Under ERISA, an employer is a fiduciary with respect to a welfare benefit fund to the extent that "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A). A question then arises as to when due and owing payments to the fund become "plan assets."

ERISA does not expressly define "plan assets." The Code of Regulations defines "plan

assets" in the context of *employee* contributions to an employee welfare benefit plan:

> **Definition of "plan assets" - - Participant contributions.** (a) General rule. For purposes of [ERISA], the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contributions to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

29 C.F.R. § 2510.3-102(a). When an employer withholds money from an employee's paycheck for deposit into ERISA benefit funds, the employer is a fiduciary with respect to this money. *Iron Workers' Local No. 25 Pension and Benefit Funds v. Steel Enterprises, Inc.*, 2009 U.S. Dist. LEXIS 101287, 47 Employee Benefits Cas. (BNA) 2827 (E.D. Mich. 2009) at *11-12 (citing *Plumbers Local 98 Def. Ben. Pension Fund v. M&P Master Plumbers of Mich.*, 608 F. Supp. 2d 873, 877-78 (E.D. Mich. 2009); *Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equipment*, LLC, 353 F. Supp. 2d 851, 854 (E.D. Mich. 2004)).

However, a distinction arises when *employer* contributions to a welfare fund are at issue. The Department of Labor has not issued a formal rule governing when *employer* contributions become plan assets. *See In re Halpin*, 566 F.3d 286, 289 (2nd Cir. 2009). However, in *Halpin*, the Second Circuit set forth a detailed discussion of the Department of Labor's position on *employer* contributions as plan assets:

> In the absence of a formal rule or regulation, the Department has informally advised that "the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law." U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993). Assets will "include any property, tangible or intangible, in which the plan has a beneficial ownership interest," considering "any contract or other legal instrument involving the plan, as well as the actions and representations of the parties involved." *Id.* Applying this reasoning, the Department has taken the position through various informal agency pronouncements that "employer contributions become an asset of the plan only when the contribution has been made." Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin 2008-1*, at 1-2 (Feb. 1, 2008); *see also*

> U.S. Dep't of Labor, Advisory Op. No. 93-14A (May 5, 1993); U.S. Dep't of Labor, Advisory Op. No. 2005-08A (May 11, 2005). "However, when an employer fails to make a required contribution to a plan in accordance with the plan documents, the plan has a claim against the employer for the contribution, and that claim is an asset of the plan." Employee Benefits Sec. Admin., U.S. Dep't of Labor, *Field Assistance Bulletin* 2008-1, at 2 (Feb. 1, 2008).
>
> The Department's position is reflected in its procedures for enforcing ERISA as outlined in its amicus brief. When an employer misappropriates contributions that the employee has made to ERISA funds, the Secretary sues the employer directly. In contrast, when an employer fails to pay contributions, and the plan's fiduciaries do not pursue the claim, the Secretary typically sues the fiduciaries for failing to enforce the plan's rights. Dep't of Labor Br. 14-15. In these cases, the Department's position is that the employer's failure to pay its contributions does not constitute a breach of fiduciary duty, and the Department lacks the authority to sue the employer directly.

*Halpin*, 566 F.3d at 289-290.

In *Halpin*, the President and sole-shareholder of Halpin Mechanical & Electrical, Inc. entered into a collective bargaining agreement and several plan-specific agreements with the International Brotherhood of Electrical Workers. *Id.* at p. 288. Halpin Mechanical and its employees were required to contribute to various ERISA pension and benefit funds. *Id.* Halpin Mechanical failed to make employer contributions to the Funds as required by the plan documents, but continued to pay other debts. *Id.* Halpin Mechanical eventually filed for bankruptcy. *Id.* An issue arose as to whether the unpaid *employer* contributions were plan assets and, if so, whether Mr. Halpin exercised sufficient control to be considered a fiduciary under ERISA. *Id.*

Based on the Department's Advisory Opinions and Assistance Bulletins, the Court in *Halpin* held that *employer* contributions become plan assets only after being paid. *Halpin*, 566 F.3d at 290. The Court stated as follows:

> Although HM&E and the trustees were free to contractually provide for some other result, nothing in the Plan Documents indicates that they did so. As the

> District Court pointed out, the assets of the Funds are described as "contributions made by Employers". . . ; there is no indication that the parties sought to displace the ordinary presumption that an employer does not become a fiduciary of plan assets simply because it is under a contractual obligation to contributed to an employee benefit fund.

In *Halpin*, the Court referred to *Jackson v. United States*, 129 S. Ct. 1307, 173 L. Ed. 2d 575 (2009), vacating and remanding, 524 F.3d 532 (4th Cir. 2008).  In *Jackson*, the Fourth Circuit had held that *employer* contributions to an ERISA plan became assets of the plan when due and payable.  *Jackson*, 524 F.3d at 542.  The United States Supreme Court granted cert and the Solicitor General took the position, citing the Advisory Opinions and Assistance Bulletins issued by the Department of Labor, that *employer* contributions do not become assets of the plan until paid, unless plan documents provide otherwise.[1]  The case was vacated and remanded by the United States Supreme Court for reconsideration in light of the position articulated by the

---

[1] As set forth in the Solicitor General's Brief for the United States in *Jackson*:

> Adopting the contrary view that unpaid employer contributions are always plan assets would have consequences that Congress could not have intended.  If unpaid contributions were plan assets, ERISA's requirements would govern the normal operations of an employer's business whenever it failed to timely pay contributions.  As soon as contributions were past due, an undifferentiated part of the employer's assets would become plan assets, and the employer would find itself in the unmanageable position of being a plan fiduciary in its general business activities.  The employer would have to manage the funds constituting plan assets (and arguably the general accounts in which the funds her comingled) with undivided loyalty to plan participants and beneficiaries, rather than the company's shareholders.  29 U.S.C. 1104(a).  The employer would have to refrain from self-dealing and transactions with parties in interest, including corporate affiliates and officers.  Ibid.; 29 U.S.C. 1106.  And the employer would have to comply with ERISA's other fiduciary provisions, such as the requirement that plan assets be held in trust and that they not inure to the benefit of the employer. 29 U.S.C. 1103 (2000 & Supp. V 2005).  Concern about those potential consequences could discourage employers from participating in ERISA plans.

Brief for the United States, *Jackson v. United States*, 129, S. Ct. 1307, 173 L.Ed. 2d 575 (2009), Discussion at Paragraph 1.b.

Solicitor General.

The holding in *Halpin,* and the *Halpin* Court's reliance on the informal Advisory Opinions and Assistance Bulletins issued by the Department of Labor and the position of the government in the *Jackson* case regarding *employer* contributions, is congruent with the findings of the Sixth Circuit.  In 2007, the Sixth Circuit stated, "Traditionally, the 'proper rule, developed by caselaw, is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically declares otherwise.'" *In re Bucci*, 493 F.3d 635, 642 (6th Cir. Ohio 2007) (quoting *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. Ala. 2003)).  District Courts in the Sixth Circuit have relied on *Bucci* and *ITPE* in holding unpaid employer contributions do not constitute plan assets unless expressly agreed to by the parties.  *See Sheet Metal Workers Local 98 Pension Fund v. Airtab, Inc.*, 2008 U.S. Dist. LEXIS 80492, 45 Employee Benefits Cas. (BNA) 2686 (S.D. Ohio 2008) (plan did not specifically declare delinquent employer contributions to be plan assets); *Iron Workers' Local No. 25 Pension Fund v. Future Fence Co.*, 2006 U.S. Dist. LEXIS 50148, 38 Employee Benefits Cas. (BNA) 2462 (E.D. Mich. 2006) (principal of corporation not liable as a fiduciary for unpaid fringe benefit contributions where nothing in underlying agreement defined unpaid fringe benefits as plan assets).[2]

---

[2]

See also *In re Luna*, 406 F.3d 1192, 1206 at n. 13 (10th Cir. Okla. 2005); *Trs. for Mich. BAC Health Care Fund. v. C.S.S. Contr. Co.,* 2008 U.S. Dist. LEXIS 41821 (E.D. Mich. May 29, 2008) at 4-11 (citing *ITPE*, 334 F.3d 1011 (11th Cir. 2003); *Plumbers Local 98 Defined Benefit Funds v. Controlled Water, Inc.*, 2006 U.S. Dist. LEXIS 69913, 40 Employee Benefits Cas. (BNA) 1390 (E.D. Mich. 2006))*; Trs. of the Conn. Pipe Trades Local 777 Health Fund v.*

In the instant action, Article 15 of the Labor Agreement between AAA Pipe Cleaning Corporation and the Brewery Worker Beer Bottlers and Soft Drink Workers' Local No. 1164, entitled Health and Welfare, states as follows:

A. The employer and the union agree that a health, welfare, and death benefit plan and fund has been established, which is legal under the laws of the State of Ohio, and under the laws of the United States, provided, that no fund shall be established to which the contributions made by the employer herein are construed to be wages under the Federal Wage and Hour Act, or, by any taxing authority as wages upon which taxes are to be withheld and paid or contributions deducted and paid under the Federal Insurance Contributions Act by the employer.

B. The Plan and Fund which has been established shall be jointly administered by a Board of Trustees consisting of (3) representatives of the Union and three (3) representatives from the group of contributing employers.  This Fund shall be used to provide insurance against non-occupational sickness, accident, or death, in accordance with the plan.

C. So that the Welfare Fund office can keep accurate records for insurance purposes, the company agrees to notify the Welfare Fund Office of all employee hirings, terminations, layoffs and layoff recalls as soon as possible, but not later than seven (7) days after each occurrence.

D. The parties agree that the Fund shall be financed by a contribution from each employer, each and every month, payable not later than the tenth (10th) of the succeeding month as follows:

    April 1, 2007 to March 31, 2010

| | |
|---|---|
| 04/01/2007 to 03/1/2008 | $140.88 per week per employee |
| 04/01/2008 to 03/31/2009 | $157.79 per week per employee |
| 04/01/2009 to 03/31/2010 | $176.73 per week per employee |

E. Contributions shall be made for new employees after 60 days from the date of hire and coverage in the Welfare Fund shall begin 30 days thereafter.

---

*Nettleton Mech. Contractors, Inc*., 478 F. Supp. 2d 279, 283 (D. Conn. 2007).

      F.      Contributions will begin sixty (60) days from the Employee's date of hire. The full month contribution with respect to each regular Employee shall be payable in respect to each month in which the employee works for the employer one (1) day, or eight (8) hours.  Any hour worked shall mean an hour for which an Employee is paid or entitled to payment by the Employer on account of a period of time that the Employee works, and also for which an Employee is paid or entitled to payment during a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, jury duty, injury, illness or otherwise under this contract.

      G.      Each employer agrees to forward its contributions each and every month to the Health, Welfare, and Death Benefit Fund herein established, with a complete payroll record sheet for that particular month.  Representatives designated by the Board of Trustees of the Fund shall check the payroll record sheet sent in by each employer.

The Court finds nothing in the foregoing Labor Agreement which specifically declares unpaid contributions to be assets of the Welfare Fund.  The Labor Agreement states only that the *employe*r is to make contributions each and every month, and describes the terms and conditions under which said contributions must be paid.  Further, there has been no mention that the due and owing contributions were paid by the employees directly to Mr. Fisco or that the due and owing contributions were withheld by Mr. Fisco from the paychecks of his employees. Accordingly, there is no basis upon which to find that the unpaid contributions were plan assets under ERISA and, therefore, there is no basis upon which to find that Mr. Fisco is a fiduciary over the delinquent contributions.  Accordingly, the Court declines to impose individual liability on Mr. Fisco for the delinquent contributions.[3]

---

[3]

    Plaintiff cites *Trustees of the Connecticut Pipe Trades Local 777 Health Fund v. Nettleton Mechanical Contractors, Inc.*, 478 F. Supp. 2d 279, 284 (D. Conn. 2007), in their Reply Brief.  However, in *Nettleton*, the Trust Agreements at issue were "clear in

**Conclusion**

Based on the foregoing, the Court hereby GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment (Docket #12). The Welfare Fund is entitled to payment from AAA Pipe Cleaning of due and owing contributions from October 2007 through August 2008, as required pursuant to the applicable collective bargaining agreement and Federal law, including interest on delinquent contributions at the rate as provide for by law pursuant to 29 U.S.C. § 1132(g) and 26 U.S.C. § 6621; an additional amount equal to interest on unpaid contributions or twenty percent (20%) of the unpaid contributions, whichever is greater, pursuant to 29 U.S.C. § 1132(g)(2)(C) in the amount of $28,475.04; plus attorney fees, costs of this action and other expenses for collection. Mr. Fisco is not individually liable to the Welfare Fund.

Plaintiff shall submit a detailed itemization and calculation of the foregoing, along with supporting law, within 10 days of this order. Defendants shall have 10 days thereafter to respond.

IT IS SO ORDERED.

                                                             s/Donald C. Nugent
                                                             DONALD C. NUGENT
                                                             United States District Judge

DATED: January 4, 2010

---

defining unpaid contributions to the plan as assets." *Id.* at p. 283. In the instant case, the Labor Agreement does not define unpaid contributions as plan assets.